UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| GARY LEIRER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:15CV00122 AGF |
| | ) | |
| THE PROCTOR & GAMBLE | ) | |
| DISABILITY BENEFIT PLAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This is an action under Section 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), for disability benefits under an employer sponsored disability benefit plan. The matter is before the Court on the cross motions for summary judgment filed by Plaintiff Gary Leirer, and by Defendants The Proctor & Gamble Disability Benefit Plan and related entities. For the reasons set forth below, Plaintiff's motion for summary judgment will be denied, and Defendants' motion for summary judgment will be granted.

## BACKGROUND

Plaintiff, who was born on August 3, 1955, was employed by The Proctor & Gamble Company, beginning on May 30, 1989, as a line operator and was a member of its Disability Benefit Plan ("DBP"), Long-Term Disability Allowance Policy Plan ("LTDP"),

and Optional Disability Insurance Plan ("ODIP"). The DBP (effective January 1, 2008), defines "Total Disability" as follows:

> [A] mental or physical condition resulting from an illness or injury which is generally considered totally disabling by the medical profession and for which the Participant is receiving regular recognized treatment by a qualified medical professional. Usually, Total Disability involves a condition of such severity as to require care in a hospital or restriction to the immediate confines of the home. The Trustees reserve the right to determine what is considered as "regular" and "recognized treatment."

ECF No. 52-22 at 43.

> "Partial Disability" is defined as:
>
> [A] mental or physical condition resulting from an illness or injury because of which the Participant is receiving medical treatment and cannot perform the regular duties of his or her job but can perform other roles at the same site or other jobs outside the Company. Thus, a condition of Partial Disability does not necessarily prevent that Participant from performing useful tasks, utilizing public or private transportation, or taking part in social or business activities outside the home.

*Id.* at 42. Partial Disability payments are limited to 52 weeks.

Determination of eligibility is vested with the relevant Trustees under all three Plans. The DBP states:

> [The] Trustees have the discretionary authority to interpret the terms of this Plan, to determine the facts underlying any benefits claims, and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Determination by the Trustees as to the interpretations and application of this Plan in any particular case shall be conclusive on all interested parties and their action shall not be subject to any review.

ECF No. 52-23 at 3. The ODIP (effective January 1, 2009) states:

> The Trustees of the Plan, in carrying out their responsibilities under the Plan, shall have discretionary authority to interpret the Plan and to determine eligibility for and entitlement to any Plan benefits in accordance with the

terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect.

ECF 52-23 at 48. And the 2012 Summary Plan Description ("SPD") for the LTDP provides:

> The Board of Trustees for The Proctor & Gamble Disability Benefit Plan is responsible for and has full and complete discretionary authority to interpret and construe the Plan's terms, including, but not limited to, the Plan's eligibility requirements and whether and to what extent the Plan provides benefits.

ECF No. 52-25 at 41.

Plaintiff stopped working on June 7, 2012, and on June 11, 2012, underwent gallbladder removal surgery for gallbladder cancer. On June 18, 2012, Plaintiff was approved for total disability benefits and began receiving benefits as of that date. In April 2013, Michael Freeman, M.D., Plaintiff's treating physician, did not "feel [Plaintiff could] handle light duty [and was] totally disabled." ECF No. 52-5 at 6. In May, June, and July of 2013, Dr. Freeman described Plaintiff's condition as "same as before." ECF No. 52-4 at 19-22.

Meanwhile, on April 24, 2013, at Defendants' request, Plaintiff underwent an independent medical evaluation ("IME") performed by Thomas Marsh, M.D. Dr. Marsh noted that the medical records submitted indicated Plaintiff suffered from numerous medical issues, many of which were either stable or had resolved. Dr. Marsh noted that although Plaintiff was described as totally disabled by Dr. Freeman, Plaintiff could drive, mow his grass with a riding lawn mower, grocery shop, carry grocery bags, and lift a gallon

of milk.  Dr. Marsh concluded that Plaintiff was not totally disabled, but rather was partially disabled, based on Plaintiff's presentation at the examination and ability to drive a car, perform activities around the house, and mow his grass.  Dr. Marsh stated, based on his examination, that Plaintiff was not functionally precluded from performing light duty or administrative tasks in the workplace.  ECF No. 15-6 at 41-49.

Dr. Marsh recommended a Functional Capacity Evaluation ("FCE"), which Plaintiff underwent on May 16, 2013.  The FCE concluded that Plaintiff was unable to perform the required tasks for his line tech position, but could perform medium demand level work on a full-time basis, with the limitations of, *inter alia*, lifting 30 pounds, walking, and climbing occasionally.  By letter to Plaintiff dated September 3, 2013, the Trustees of the DBP informed Plaintiff that, based on the FCE, they determined that he could perform some medium work.  The letter stated that Plaintiff's department did not have work available to accommodate his work restrictions, and hence, he would receive Partial Disability payments commencing July 10, 2013, and ending 52 weeks thereafter. Lastly, the letter informed Plaintiff of his right to appeal the Trustees' decision, and set forth the procedures for doing so.  ECF No. 52-10 at 2-3.

On February 26, 2014, Plaintiff administratively appealed the Partial Disability decision.  He stated that he was permanently and totally disabled, asserted that the FCE was incomplete because he had "additional problems" that were not noted therein, and asserted that his condition had gotten progressively worse since the FCE.  Plaintiff stated that he would supplement his appeal with records to be forthcoming from the Mayo Clinic.

4

Plaintiff further asserted that he had sleep apnea and narcolepsy; that he could not work at his former line operator position; and that his medical conditions and treatments precluded him from work in any occupation. ECF 52-10 at 5-12.

Plaintiff included with his appeal a January 15, 2014 vocational rehabilitation evaluation by licensed psychologist Vincent F. Stock. M.A. Scott stated that his opinion was based on then-current information (consisting of a review of medical records and an interview with Plaintiff). Scott opined that Plaintiff "may" be permanently restricted from work as a line operator or any other full-time or part-time positions, and stated that once Plaintiff's physicians made recommendations concerning his physical restrictions a further statement of Plaintiff's vocational possibilities would be considered. ECF No. 52-10 at 13-22. Plaintiff also submitted extensive examination and laboratory records.

On May 27, 2014, an independent medical review was conducted by Sunil Sheth, M.D., at the request of the Trustees. Dr. Sheth found, based upon a review of the medical record, that although Plaintiff suffered from various medical conditions both before and after his gallbladder surgery, there was no objective medical evidence "to substantiate an inability to work in any capacity" from July 10, 2013, onward. ECF No. 52-19 at 44-49.

By letter dated June 17, 2014, the Trustees informed Plaintiff that the decision to terminate Plaintiff's total disability benefits was upheld. The letter cited the applicable definition of Total Disability as providing that "[u]sually, Total Disability involves a condition of such severity as to require care in a hospital or restriction to the immediate confines of the home." The letter stated that the decision was based on the May 16, 2013

5

FCE, Dr. Marsh's April 24, 2013 IME, and a review of all the information provided to them in support of Plaintiff's claim for deniability benefits entitlement. ECF. No. 52-19 at 53-56.

On June 23, 2015, Plaintiff filed this suit, claiming that he was improperly denied continuing Total Disability benefits. He seeks recovery of benefits due plus prejudgment interest (Count I) and a penalty of $110 per day from March 28, 2014, based on Defendants' failure to provide a copy of a 2012 DBP he believes governs his claim (Count II).

## ARGUMENTS OF THE PARTIES

### Plaintiff's Motion for Summary Judgment

In support of his motion for summary judgment (ECF No. 55), Plaintiff first argues that the proper standard of review for Defendants' denial of benefits is *de novo*. Plaintiff asserts that the 2012 SPDs for the LTDP Plan and the ODIP do not contain any discretionary language that would trigger review under an abuse of discretion standard. Plaintiff alternatively posits that *de novo* review should be applied due to alleged "procedural irregularities," including (1) relying on the "outdated" May 16, 2013 FCE and April 24, 2013 IME, as opposed to relying on the January 15, 2014 vocational evaluation report, and unspecified medical reports he submitted in connection with his appeal; (2) not providing a full and fair review; (3) operating under a conflict of interest in that Defendants both decided his claim and are responsible for paying his benefits; and (4) not timely producing Plan documents.

Plaintiff argues that regardless of the standard of review, he is entitled to summary judgment because Defendants abused their discretion, in light of the "procedural irregularities" noted above, and the "flawed interpretation" of Total Disability. Plaintiff asks for either summary judgment or remand to Defendants for a new review, with all prior and current evidence considered. Plaintiff also argues that he is entitled to the penalty he seeks due to Defendants' failure to produce a 2012 DBP that must have been the Plan controlling his claim.

Defendants respond (ECF No. 65) that the abuse of discretion standard of review applies because of the language granting broad discretionary authority to the Trustees in all relevant Plans and/or SPDs. Defendants contest the "procedural irregularities" cited by Plaintiff and argue that they do not warrant application of the *de novo* standard of review. Defendants argue that the decision to deny Total Disability benefits after July 10, 2013, was not an abuse of discretion; the review and analysis conducted by Defendants conformed to the applicable ERISA standards; Defendants produced the requested documents to Plaintiff in conformity with ERISA's requirements; and Defendants' construction of "Total Disability" was a matter within their discretion. Defendants argue that remand is not warranted because Plaintiff showed no objective evidence to establish that he satisfied the applicable definition of Total Disability. Lastly, Defendants assert that Plaintiff is not entitled to penalties because any failure to provide Plaintiff with a copy of a 2012 DBP was not a result of bad faith and did not prejudice Plaintiff.

Plaintiff replies (ECF No. 70) that Defendants' failure to provide a 2012 DBP prejudiced his ability to effectively appeal the cessation of Total Disability benefits. Plaintiff further asserts that Defendants' failure to provide the controlling 2012 Plan should lead to penalties to deter Defendants from treating other participants in a similar fashion. Additionally, Plaintiff again questions the fullness and fairness of the review conducted by Defendants, and argues that Defendants did not fairly consider Stock's findings and other information, and never adequately specified why Plaintiff's evidence was insufficient.

**<u>Defendants' Motion for Summary Judgment</u>**

In support of their own motion for summary judgment (ECF No. 53), Defendants first argue that the abuse of discretion standard of review applies based on the language of the Plans in force that granted broad discretionary authority to the Trustees. Defendants next assert that the Trustees' decision to deny additional benefits was clearly reasonable and not an abuse of discretion. Defendants point to reports and facts in the record supporting the finding of Partial Disability, and argue that Plaintiff never showed any objective evidence of total disability precluding him from returning to work.

Plaintiff responds (ECF No. 62) that the relevant Plan documents do not grant the Trustees discretionary authority, and so *de novo* review applies. Plaintiff disputes Defendants' assertions regarding the lack of objective evidence of Plaintiff's total disability, contests that such evidence should be expected in this case, and moves to strike Dr. Sheth's May 7, 2014 report because Plaintiff did not have a chance to respond to it before his administrative appeal was denied. Plaintiff also posits that Defendants' failure

to produce the 2012 DBP constituted a breach of their fiduciary duties, and warrants an award of penalties under ERISA.

In reply (ECF No. 68), Defendants contest Plaintiff's construction of the 2012 SPD, and maintain that its language grants the Trustees discretion. Defendants also describe their allegedly appropriate responses to Plaintiff's requests for documents, and Defendants' general compliance with applicable procedural and ERISA requirements.

## DISCUSSION

### Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, facts and all reasonable inferences must be construed in favor of the nonmoving party; however, "facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (citation omitted). "The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Briscoe v. County of St. Louis, Mo.*, 690 F.3d 1004, 1011 (8th Cir. 2012) (citations omitted). The movant is entitled to summary judgment when the nonmovant has failed "to establish the existence of an element

9

essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

**Standard of Review**

"In general, a claim administrator's denial of benefits is subject to *de novo* review by the district court. Where the plan grants the administrator or fiduciary 'discretionary authority' to determine eligibility for benefits, however, the standard of review is relaxed, and abuse of discretion becomes the appropriate benchmark." *Cooper v. Metro. Life Ins. Co.*, 862 F.3d 654, 660 (8th Cir. 2017). "To determine whether the benefit plan gives the administrator or fiduciary discretionary authority, courts must look for explicit discretion-granting language in the policy or in other plan documents." *McKeehan v. Cigna Life Ins. Co*., 344 F.3d 789, 793 (8th Cir. 2003) (citations omitted). Here, the language quoted above with regard to the Trustees' discretionary authority is sufficient to trigger the abuse-of-discretion standard. *See Cooper*, 862 F.3d at 660. Plaintiff's contentions of an inherent conflict of interest and "procedural irregularities" which led to a breach of Defendants' fiduciary duties, are unavailing. The Eighth Circuit "has consistently rejected the notion that the mere presence of a potential conflict of interest is sufficient to warrant a less deferential standard." *Id*. at 660-61; s*ee also Whitley v. Standard Ins. Co.*, 815 F.3d 1134, 1140 (8th Cir. 2016). This inherent conflict of interest, however, must be weighed as a factor in a court's overall review, with the weight dependent on evidence that the review process was "tainted by bias;" that the medical professionals who reviewed the claim were employed by the insurer; that the medical

professionals' compensation was tied to their findings; and that the insurer acted as "little more than a rubberstamp for favorable medical opinions." *Cooper*, 862 F.3d at 661.

Here, Plaintiff claims a conflict of interest because Defendants both decided Plaintiff's claim and are responsible for paying his benefits. However, Plaintiff does not point to any additional factors, such as those identified above, that would compel the Court to weigh heavily any conflict of interest present here.

Furthermore, Plaintiff's argument regarding Defendants' reliance on outdated evaluations and failing to evaluate and credit Plaintiff's vocational evidence and later medical records also fail to justify lowering the Court's standard of review. Rather this argument goes to the merits of Defendants' decision to deny continuing total disability benefits.

Under the abuse of discretion standard, the Court will uphold a claim administrator's decision so long as it is reasonable and supported by substantial evidence. *Hampton v. Reliance Standard Life Ins. Co.*, 769 F.3d 597, 600 (8th Cir. 2014). "A decision is reasonable if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." *Ingram v. Terminal R.R. Ass'n of St. Louis Pension Plan for Nonschedule Emps.*, 812 F.3d 628, 634 (8th Cir. 2016) (citation omitted). The court must not substitute its own weighing of the evidence for that of the decision-maker. *Gerhardt v. Liberty Life Assur. Co. of Boston*, 736 F.3d 777, 780 (8th Cir. 2013).

Here the Court concludes that Defendants' decision is reasonable and supported by substantial evidence, namely, Dr. Marsh's April 24, 2013 assessment that Plaintiff could perform light duty or administrative tasks in the workplace; the May 16, 2013 FCE finding that Plaintiff was able to perform medium level work with certain limitations; and Dr. Stith's May 27, 2014 independent medical review that found that there was no objective medical evidence to support that Plaintiff was unable to perform any work from July 10, 2013, onward. *See id*. (holding that an ERISA plan administrator did not abuse its discretion in terminating disability benefits where treating physician opined that plaintiff was disabled, but functional capacity exam and independent medical exam showed plaintiff could perform sedentary work); *Midgett v. Wash. Grp. Int'l Long Term Disability Plan*, 561 F.3d 887, 897 (8th Cir.2009) (holding that plan administrator had the "discretion to deny benefits based upon its acceptance of the opinions of reviewing physicians over the conflicting opinions of the claimant's treating physicians"). The Court reaches the same decision even without consideration of Dr. Stith's report.

The applicable definition of Total Disability, stating that it usually requires that one be hospitalized or confined to the home, is rather strict, but this is the bargained-for coverage. *See Nichols v. Procter & Gamble Long Term Disability Allowance Policy*, No. 4:12-CV-00232-KGB, 2013 WL 5467191, at *11 (E.D. Ark. Sept. 30, 2013) (finding that ERISA plan trustees did not abuse their discretion in finding that the plaintiff was only "partially disabled," rather than "totally disabled," under applicable definitions of those terms, identical to the definitions in the present case). Even under a less stringent

definition of what would constitute total disability, for example, the inability to perform any job at the company or elsewhere, the evidence supports a decision that Plaintiff was not totally disabled after July 10, 2013. Lastly, even accepting that Defendants did not provide Plaintiff with a copy of the 2012 DBP (one does not appear in the record), Plaintiff has not persuaded the Court that he was in any way prejudiced thereby, and he has not cited any case law suggesting that this failure, in and of itself, warrants the relief Plaintiff seeks.

In sum, upon the examination of the administrative record and consideration of Plaintiff's and Defendants' arguments, the Court finds that Defendants' conclusion that Plaintiff did not suffer from a "Total Disability" from July 10, 2013, forward is reasonable and supported by substantial evidence.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the Plaintiff's motion for summary judgment is **DENIED**. (ECF No. 54.)

**IT IS FURTHER ORDERED** that the Defendants' motion for summary judgment is **GRANTED**. (ECF No. 51.)

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 29th day of September, 2017.